# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | Case No. 4:18-cv-00519-ALM-KPJ |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| BANK OF AMERICA CORPORATION, | |
| Defendant. | |

## DEFENDANT BANK OF AMERICA CORPORATION'S MOTION TO STAY

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. BACKGROUND ................................................................................................2

III. THIS CUSTOMER SUIT AGAINST BANK OF AMERICA SHOULD BE
STAYED PENDING FINAL RESOLUTION OF THE MANUFACTURER
CASES ................................................................................................................5

    A.    Legal Standard:  The Customer Suit Doctrine ...........................................5

    B.    The Customer Suit Doctrine Warrants a Stay of This Case .....................8

    C.    Additional Factors Weigh in Favor of a Stay...........................................11

IV. CONCLUSION..................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Belfer Cosmetics, LLC v. Nordstrom, Inc.*,
  No. H-15-683, 2016 WL 8792318 (S.D. Tex. Feb. 26, 2016) ...................................................7

*Capital Sec. Sys., Inc. v. NCR Corp.*,
  No. 1:14-cv-1516-WSD et al., 2015 WL 3819336 (N.D. Ga. June 18, 2015) .........................7

*Cellular Commc'ns Equipment LLC v. Apple, Inc.*,
  No. 6:14-cv-251-KNM, 2016 WL 6884648 (E.D. Tex. Aug. 26, 2016) ....................6, 7, 8, 10

*Collaborative Agreements, LLC v. Adobe Sys. Inc.*,
  No. 1:14-cv-356-LY, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015) .............................7, 10

*Glenayre Elecs., Inc. v. Jackson*,
  443 F.3d 851 (Fed. Cir. 2006) ..................................................................................................12

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989) .................................................................................................5

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ...................................................................................6, 10, 11

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ....................................................................................................................5

*Mantissa Corp. v. Old Second Bancorp, Inc.*,
  No. 17-cv-9175, 2018 WL 3059604 (N.D. Ill. June 20, 2018) ...................................................6

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ......................................................................1, 2, 5, 6, 10, 12

*Opticurrent, LLC v. Power Integrations, Inc.*,
  No. 2:16-cv-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) .................................7, 9

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
  No. 2:16-cv-82-JRG, 2017 WL 3712912 (E.D. Tex. July 12, 2017)...........1, 6, 7, 9, 10, 11, 12

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011)..............................................................................................5, 6

*T.J. Smith & Nephew Ltd. v. Ferris Corp.*,
  No. 86- C 5461, 1987 WL 7496 (N.D. Ill. Feb. 27, 1987) ......................................................12

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Telebrands Corp. v. Nat'l Exp., Inc.*,
 No. 12-cv-6671 et al., 2014 WL 4930897 (D.N.J. Oct. 2, 2014) ........................................7, 10

*Terrell v. DeConna*,
 877 F.2d 1267 (5th Cir. 1989) ..............................................................................................11

*Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*,
 No. 0:16-cv-60693-UU, 2016 WL 6678525 (S.D. Fla. June 8, 2016)......................................6

*Tile Tech, Inc. v. Appian Way Sales, Inc.*,
 No. C17-1660JLR, 2018 WL 2113958 (W.D. Wash. May 8, 2018).........................................7

*UltimatePointer, L.L.C. v. Nintendo Co.*,
 No. 6:11-cv-496-LED et al., 2014 WL 12515338 (E.D. Tex. June 17, 2014) ...................9, 11

*WP Banquet, LLC v. Target Corp.*,
 No. 16-cv-02082-JAK(JPRx), 2016 WL 9450448 (C.D. Cal. Dec. 15, 2016).........................7

## I.     INTRODUCTION

Wapp Tech Limited Partnership and Wapp Tech Corp. (collectively, "Wapp") allege that "[c]ertain Micro Focus software products that are used by [Bank of America Corporation ("Bank of America")] infringe the Patents-in-Suit."[1]  Dkt. No. 1 ¶ 15.  Wapp has not limited its lawsuit to Bank of America, but also sued Wells Fargo & Co. and Hewlett Packard Enterprise Company ("Hewlett Packard Enterprise") in this Court, alleging infringement of the same patents based on the same products and functionalities.  More significant, however, Wapp filed yet another suit in this Court against the alleged manufacturer of the "Micro Focus software products," Micro Focus International plc.  In that suit against Micro Focus International plc, Wapp asserts infringement of the same patents, by the same accused products and functionalities, using the same theories of infringement, as it does in this suit against Bank of America.  In fact, demonstrative of the uniformity of its allegations, Wapp attached identical "infringement" charts to its complaints against Bank of America and Micro Focus International plc, as well as Wells Fargo and Hewlett Packard Enterprise.  That Wapp's complaints against the alleged manufacturer of the accused software and that manufacturer's customers are essentially indistinguishable, strongly supports the relief requested herein by Bank of America:  stay this (and the other) customer suits while Wapp litigates its claims against the manufacturer.

"[T]o facilitate just, convenient, efficient, and less expensive determination[s]" in circumstances such as this, "courts have developed a practice of" applying the "customer suit doctrine" to "stay[] claims against customers pending resolution of the suit against the manufacturer" where the actions involve at least the same "major" issues, such as infringement and invalidity.  *In re*

---

[1]     Bank of America Corporation is a holding company that provides no products or services in this District, unlike its wholly owned subsidiary, Bank of America, N.A.

*Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912, at *2 (E.D. Tex. July 12, 2017).  Resolution of such issues in an action against the manufacturer—the "'true defendant' in the dispute"—will also resolve those same issues in the customer suit.  *Nintendo*, 756 F.3d at 1366.  That is the situation here, and thus any final judgment as to infringement and invalidity in the manufacturer suits will resolve the same issues as to Bank of America.  And any damages award that Wapp could obtain against the manufacturer would preclude a double recovery against Bank of America.

While Micro Focus International plc has filed a motion to dismiss the case against it for lack of personal jurisdiction and failed service of process, Wapp will have a party against whom it can seek redress for the infringement alleged.  Indeed, the two subsidiaries of Micro Focus International plc that actually market and license the accused software, Seattle SpinCo, Inc. ("Seattle SpinCo") and EntIT Software LLC ("EntIT Software"), recently brought an action for declaratory judgment against Wapp for non-infringement and invalidity of the same Wapp patents in view of the same products and functionalities.  Accordingly, Seattle SpinCo and EntIT Software are the proper defendants, not Micro Focus International plc.  Nevertheless, regardless of which of these two suits goes forward, at least one manufacturer suit involving the same allegations as in this suit against Bank of America will survive.

Additionally, in the event of a stay, Bank of America agrees to be bound by any final judgment in the appropriate manufacturer suit.  Thus, the customer suit doctrine warrants a stay of this case pending final resolution of the manufacturer litigation.

## II.    BACKGROUND

**<u>The Manufacturer Actions</u>.**  On July 2, 2018, Wapp filed a complaint in this Court against Micro Focus International plc.  In that complaint, Wapp alleges that Micro Focus International plc directly infringed U.S. Patent Nos. 9,971,678, 9,298,864, and 8,924,192 (the "Patents-in-Suit") by

making, using, offering to sell, and/or selling the following software products and functionalities: specifically, in its complaint against Micro Focus International plc, Wapp alleges that Micro Focus International plc "has directly infringed at least Claim 1 of the [asserted patents], including making, using (including for testing purposes), selling, and offering for sale . . . including and not limited to the LoadRunner, Performance Center, StormRunner and Mobile Center software products ('Micro Focus Software Suite')." *Wapp Tech Ltd. v. Micro Focus Int'l plc*, No. 4:18-cv-00469-ALM (E.D. Tex. filed July 2, 2018), Dkt. No. 1, ¶¶ 59, 76 and 95. Attached to Wapp's complaint against Micro Focus International plc are several claim charts purporting to support Wapp's allegations of infringement for certain claims of each Patent-in-Suit, on an element-by-element basis. *See id.*, Dkt. No. 1, Exs. 4–6. Today, on October 17, 2018, Micro Focus International plc moved to dismiss Wapp's complaint against it on various grounds, including that Micro Focus International plc does not make the accused software, is not subject to personal jurisdiction in the state of Texas, and has not been served. *Id.*, Dkt. No. 12. Micro Focus International plc's motion to dismiss remains pending.

Meanwhile, also on October 15, 2018, Seattle SpinCo and EntIT Software, which claim to be indirect wholly owned subsidiaries of Micro Focus International plc, jointly filed a declaratory judgment action against Wapp in the District of Delaware. *Seattle SpinCo, Inc. v. Wapp Tech Ltd. P'ship*, No. 1:18-cv-01585-UNA, Dkt. No 1 ¶ 4 (D. Del.). In that action, Seattle SpinCo and EntIT Software assert that they make and sell the accused software, and they seek a declaratory judgment of non-infringement and invalidity with respect to the same Patents-in-Suit asserted against Micro Focus International plc. *Id.* ¶¶ 21–26.

**The Bank of America Action.**[2]  On July 16, 2018, Wapp filed its Complaint in this action against Bank of America.  Dkt. No. 1.  In its Complaint in this case, Wapp alleges that Bank of America "has been making and/or using (including for testing purposes) and continues to make and/or use (including for testing purposes) . . . including and not limited to the Micro Focus Software Suite and LoadRunner."  *Id.* ¶ 26.  As with Wapp's allegations against Micro Focus International plc, Wapp alleges only direct infringement of the Patents-in-Suit against Bank of America.  Dkt. No. 1 ¶¶ 58, 76, 96.  Likewise, the substance of Wapp's allegations of infringement against Bank of America are identical to those against Micro Focus International plc.  *Compare* Dkt. No. 1 ¶¶ 35–109, *with* No. 4:18-cv-00469-ALM, Dkt. No. 1 ¶¶ 30–107.  In particular, Wapp attaches the same alleged infringement charts to its Complaint against Bank of America as it did to its complaint against Micro Focus International plc.  *Compare* Dkt. Nos. 1-14, 1-15, and 1-16, *with* No. 4:18-cv-00469-ALM, Dkt. Nos. 1-4, 1-5, and 1-6.  And the charts are directed solely to the accused products and functionalities allegedly made and sold by Micro Focus International plc.  Wapp makes no other claims against Bank of America in this case.

Despite Wapp's allegations, Bank of America, which is a holding company, does not actually use the accused software.  But to the extent any subsidiary of Bank of America does use any of the accused software, such subsidiary is merely a customer that uses the software "off the shelf."  Ex. A ¶ 5; *see also* Dkt. No. 1 ¶¶ 24, 28, 30.  More specifically, to the extent a subsidiary of Bank of America uses the accused products and functionalities, they are used for their intended purpose.

---

[2]  As noted, Wapp also filed cases against Wells Fargo, *Wapp Tech Ltd. v. Wells Fargo & Co.*, No. 4:18-cv-00501-ALM (E.D. Tex. filed July 16, 2018) and Hewlett Packard Enterprise, *Wapp Tech Ltd. v. Hewlett Packard Enterprise Co.*, No. 4:18-cv-00468-ALM (E.D. Tex. filed July 2, 2018).  Both Wells Fargo and Hewlett Packard Enterprise have filed motions to stay in their respective cases.

Ex. A ¶ 5.  Neither Bank of America, nor any subsidiary, has ever had a role in designing, devel-

oping, producing, or maintaining any of the accused software.  *Id.* ¶ 4.  Neither Bank of America,

nor any subsidiary, modifies the accused software in any way.  *Id.* ¶ 5.  Indeed, Bank of America

is not aware of any way to modify the code in the accused software; neither would such modifica-

tions be permitted to be made even if it were possible to do so.  *Id.*

Bank of America filed an answer to Wapp's Complaint on October 16, 2018.  Dkt. No. 9.

In its answer, Bank of America denies Wapp's allegations of infringement of the Patents-in-Suit.

Bank of America also asserts several affirmative defenses, including that the asserted claims of the

Patents-in-Suit are invalid.  *Id.* ¶¶ 110–24.

## III.   THIS CUSTOMER SUIT AGAINST BANK OF AMERICA SHOULD BE STAYED PENDING FINAL RESOLUTION OF THE MANUFACTURER CASES

### A.   Legal Standard:  The Customer Suit Doctrine

"[T]he power to stay proceedings is incidental to the power inherent in every court to con-

trol the disposition of the causes on its docket with economy of time and effort for itself, for coun-

sel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

As such, where the customer of a product has been sued for alleged patent infringement

based on the customer's use of the product, courts have applied the "customer suit doctrine" to

stay the litigation against the customer so that a co-pending action based on similar claims against

the product's manufacturer can first proceed to conclusion.  *See, e.g.*, *Nintendo*, 756 F.3d at 1365.

The Federal Circuit has explained that this doctrine "is based on the manufacturer's presumed

greater interest in defending its actions against charges of patent infringement . . . and to guard

against possibility of abuse," and is intended "to facilitate just, convenient, efficient, and less ex-

pensive determination[s]."  *See id.* at 1365; *Spread Spectrum Screening LLC v. Eastman Kodak

Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078,

1081 (Fed. Cir. 1989)).

Accordingly, where the customer and manufacturer suits share the same "major issues," such as infringement and invalidity, and thus resolution of those issues in the manufacturer suit will resolve the same issues in the customer suit, the doctrine "exists to avoid . . . imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *See Nintendo*, 756 F.3d at 1366; *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This is true even if there "may be additional issues involving the defendant[] in [the customer suit]," as the customer suit nevertheless "will be advanced if [the plaintiff] is successful on the major premises being litigated in [the manufacturer litigation], and may well be mooted if [the plaintiff] is unsuccessful." *Nintendo*, 756 F.3d at 1366 (quoting *Katz*, 909 F.2d at 1464) (internal quotation marks omitted); *Spread Spectrum*, 657 F.3d at 1358.

In *Nintendo*, the Federal Circuit directed a district court to stay infringement suits against eleven customer defendants, finding that the "case against [the manufacturer] must proceed first, in any forum." 756 F.3d at 1366. The court reasoned that "the issues of infringement and validity [we]re common" to the manufacturer and the customer suits, and "that if [the plaintiff] were to collect royalties from [the manufacturer], this would preclude suit against the [customers]." *Id.* Thus, the court held that "[s]ince [the manufacturer's] liability is predicate to recovery from any of the defendants, the case against [the manufacturer] must proceed first." *Id.*

After *Nintendo*, a court in this District has recognized that "courts have developed a practice of . . . staying claims against customers pending resolution of the suit against the manufacturer." *Saint Lawrence*, 2017 WL 3712912, at *2 (citing *Cellular Commc'ns Equipment LLC v. Apple, Inc.*, No. 6:14-cv-251-KNM, 2016 WL 6884648 (E.D. Tex. Aug. 26, 2016)); *see also Mantissa Corp. v. Old Second Bancorp, Inc.*, No. 17-cv-9175, 2018 WL 3059604, at *3 (N.D. Ill. June

20, 2018) ("District courts . . . have routinely applied this [customer suit] doctrine to stay patent infringement claims against customers in favor of resolving the patentee's claims against the up-stream manufacturer first."); *Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693-UU, 2016 WL 6678525, at *4 (S.D. Fla. June 8, 2016) ("Courts often stay patent litigation brought against resellers of allegedly infringing products under the customer suit doctrine pending resolution of claims against the product's manufacturer."). Specifically, courts in this District and others have applied this doctrine to stay a customer suit where, as in this case, there are co-pending claims of infringement against the manufacturer based on the same patents and products.[3]

In *Saint Lawrence*, for example, a court in this District stayed a customer suit in favor of a manufacturer suit based on the same products and patents, where "the infringement contentions . . . served on" the manufacturer and customers "were identical." 2017 WL 3712912, at *1. The court held that the claims against the customer defendants were "peripheral" to those against the manu-facturer, noting that the customer defendants "play[ed] no role in the development, design, or im-plementation of the relevant software code." *Id.* at *2. The court further relied on the fact that the customer defendants had "agree[d] to be bound by the invalidity and infringement rulings in [the manufacturer] case." *Id.* The court held that "infringement and invalidity—two of the biggest issues in any patent case—[would therefore] be resolved by the first trial against" the manufac-turer. *Id.*; *see also Collaborative Agreements*, 2015 WL 10818739, at *2 (staying a customer suit

---

[3]     *See, e.g.*, *Saint Lawrence*, 2017 WL 3712912, at *1–2; *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395, at *4–5 (E.D. Tex. Oct. 19, 2016); *Cellular Commc'ns*, 2016 WL 6884648, at *1; *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1:14-cv-356-LY, 2015 WL 10818739, at *1–3 (W.D. Tex. Aug. 21, 2015); *Belfer Cosmetics, LLC v. Nordstrom, Inc.*, No. H-15-683, 2016 WL 8792318, at *1–3 (S.D. Tex. Feb. 26, 2016); *Tile Tech, Inc. v. Appian Way Sales, Inc.*, No. C17-1660JLR, 2018 WL 2113958, at *1–3 (W.D. Wash. May 8, 2018); *WP Banquet, LLC v. Target Corp.*, No. 16-cv-02082-JAK(JPRx), 2016 WL 9450448, at *1, 5–6 (C.D. Cal. Dec. 15, 2016); *Capital Sec. Sys., Inc. v. NCR Corp.*, No. 1:14-cv-1516-WSD et al., 2015 WL 3819336, at *1–3 (N.D. Ga. June 18, 2015).

where the customer defendants agreed to "be bound by any infringement rulings against [the manufacturer]"); *cf. Telebrands Corp. v. Nat'l Exp., Inc.*, No. 12-cv-6671 et al., 2014 WL 4930897, at *4–5 (D.N.J. Oct. 2, 2014) (staying a customer suit *even though* the customer defendants had *not* "agreed to be bound by the judgments in the manufacturer cases").

In *Cellular Communications*, another court in this District stayed a customer suit in favor of a similar manufacturer suit. As in *Saint Lawrence*, the district court in *Cellular Communications* based its decision in part on the fact that the plaintiff had "drafted a single set of identical infringement contentions for" the manufacturer and the customer defendants, and thus the "infringement claims" against the customers were "substantively identical to the infringement claims against" the manufacturer. 2016 WL 6884648, at *2. The court rejected the plaintiff's argument that the customers were required to "configure" the accused phones and tablets "in a way that [was] compatible with their network" and that the customers "t[ook] the extra step of bundling" the accused software "with service plans and imposing standards which must be maintained in order to use the device." *Id.* The court reasoned that any such differences did not change the identical "infringement allegations" against the customer and manufacturer defendants, as the differences "d[id] not change the fact that" the customers "d[id] not modify or alter the patented technology at issue." *Id.*

### B. The Customer Suit Doctrine Warrants a Stay of This Case

Under the customer suit doctrine, this lawsuit should be stayed pending the final outcome of the current litigation against the manufacturer of the accused software. While there are two pending suits involving the alleged manufacturer of the accused software—*i.e.*, the case brought by Wapp against Micro Focus International plc in this Court and the declaratory judgment action brought by Seattle SpinCo and EntIT Software against Wapp in Delaware—there can be no dispute among the parties to those cases that only one of the cases should move forward on the merits; the

parties may only disagree as to which of the two cases should be the one to proceed. Regardless
of which case ends up moving forward, that case will be the operative manufacturer suit. And this
action against Bank of America should be stayed in view of that operative manufacturer suit.

In particular, a stay of this case, as well as those against Wells Fargo and Hewlett Packard
Enterprise, should be granted under the customer suit doctrine because these cases and the manu-
facturer suit involve the same Patents-in-Suit, the same accused products and functionalities, and
the same allegations of infringement. Thus, any final judgment in the manufacturer litigation will
resolve at least the "major issues" of infringement and invalidity in this case. Accordingly, a stay
of this customer suit against Bank of America will best "facilitate [a] just, convenient, efficient,
and less expensive determination" and "avoid" unnecessarily "imposing the burdens of" litigation
on Bank of America. *See Nintendo*, 756 F.3d at 1365–66. Likewise, a stay of all of the other non-
manufacturer cases, *i.e.,* those against Wells Fargo and Hewlett Packard Enterprise, will provide
enhanced efficiencies and decrease the burdens on the courts.

First, the accused products and functionalities are the same in this case as in the manufac-
turer suits. As an alleged customer, Bank of America is at most a mere user of the accused soft-
ware. As with the customer defendant in *Saint Lawrence*, Bank of America "play[s] no role in the
development, design, or implementation of the relevant software code" or any other aspect of the
accused software. *See* 2017 WL 3712912, at *2; Ex. A ¶ 4; *see also Opticurrent*, 2016 WL
9275395, at *5 (granting a stay of the customer suit where the customer was "merely a 'distributor
or reseller of the accused products'"). To the extent Bank of America, or any subsidiary, uses any
of the accused software, such use is "off the shelf," meaning that no modifications are made to the
software. Ex. A ¶ 5. In fact, Bank of America is not aware of any modifications that it could make
to the accused software, nor would any such modifications be permitted even if it were possible to

make them. *Id.* Thus, to the extent there is such use, the products and functionalities are used for their intended purpose. *Id.*

Second, this case and the manufacturer suits involve the same Patents-in-Suit and infringement allegations. Moreover, just as the plaintiffs did in *Saint Lawrence* and *Cellular Communications*, Wapp attached *identical* infringement charts to its complaints against Bank of America and Micro Focus International plc, and the charts are directed solely to the accused products and functionalities allegedly made and sold by Micro Focus International plc. *Compare* Dkt. No. 1, Exs. 4–6, *with* No. 4:18-cv-00469-ALM, Dkt. No. 1, Exs. 4–6; *Saint Lawrence*, 2017 WL 3712912, at *1; *Cellular Communications*, 2016 WL 6884648, at *2. Wapp alleges only direct infringement against each defendant, and has not raised any separate claims unique to either defendant. Dkt. No. 1 ¶¶ 58, 76, 96; No. 4:18-cv-00469-ALM, Dkt. No. 1 ¶¶ 59, 76, 95. Because the basis for alleged infringement is the same for Bank of America as for the product manufacturer, the outcome of Wapp's infringement claims against the manufacturer will dispose of the infringement question as to Bank of America here.

Third, although a customer defendant's agreement "to be bound by the judgments in the manufacturer cases" is "not require[d]" for a stay under the customer suit doctrine, Bank of America hereby agrees in the event of a stay to be bound by any final judgment of liability in the manufacturer litigation, including as to infringement and invalidity. *See Telebrands*, 2014 WL 4930897, at *4; *see also Katz*, 909 F.2d at 1464. Like the customer defendants' agreements to be bound in *Collaborative Agreements* and *Saint Lawrence*, Bank of America's agreement to be bound only further "reinforce[s]" that Wapp's claims against Bank of America are "peripheral to the central infringement dispute" against the alleged manufacturer of the accused software. *See Collaborative Agreements*, 2015 WL 10818739, at *2; *Saint Lawrence*, 2017 WL 3712912, at *2.

Fourth, any payment of a royalty by the manufacturer of the accused software—whether from a settlement or an adverse judgment in one of the pending cases—will exhaust Wapp's claims against Bank of America. *Nintendo*, 756 F.3d at 1366. That also would render this lawsuit moot, since Bank of America would not owe any damages for infringement. *Id.*

Thus, because this case and the manufacturer suits share at least the same infringement and invalidity questions—"two of the biggest issues in any patent case"—and particularly because Bank of America agrees to be bound in the event of a stay by any final judgment of liability in the manufacturer litigation, allowing the manufacturer suit to proceed first will resolve those same issues in this case and potentially moot others. *Saint Lawrence*, 2017 WL 3712912, at *2. Indeed, issue preclusion also will bar Wapp from relitigating against Bank of America any issues on which Wapp loses in the manufacturer litigation. *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989). Here, the manufacturer (whether Seattle SpinCo and EntIT Software, or Micro Focus International plc) is the "'true defendant' in the dispute" with a significant interest in proceeding first in this litigation, not only to "protect [its alleged] customers" "as a matter of contract" and "good business," but also "to avoid the damaging impact of an adverse ruling against [its products]." *Katz*, 909 F.2d at 1464 (citation omitted). The instant action against Bank of America, which is merely "peripheral" to that dispute, therefore should be stayed pending final resolution of the manufacturer litigation.

### C.     Additional Factors Weigh in Favor of a Stay

Although this litigation can and should be stayed based on the customer suit doctrine alone, the following three factors further weigh in favor of a stay:

(1)  This case is in its infancy, where Bank of America filed its answer to the complaint just yesterday, discovery has not begun, and no trial date has been set;

(2)  As discussed above, a stay of this case "will simplify the issues in question and trial of

the case," based on resolution of at least the same "major" issues in the manufacturer litigation and Bank of America's agreement to be bound in the event of a stay by any final judgment as to such issues (*supra*, Section III(B)); and

(3) Wapp will suffer no "prejudice" or "clear tactical disadvantage" from a stay. *UltimatePointer, L.L.C. v. Nintendo Co.*, No. 6:11-cv-496-LED et al., 2014 WL 12515338, at *9 (E.D. Tex. June 17, 2014) (citation and internal quotation marks omitted).

As to the third factor, Wapp will suffer no prejudice from a stay of this case because Wapp will still be able to proceed with the manufacturer litigation which, as demonstrated by Wapp's identical infringement charts as to Bank of America and Micro Focus International plc, involves the same infringement allegations as in this case. And it is the alleged manufacturers—not Bank of America, a mere customer—that would be the primary source of relevant information. *See T.J. Smith & Nephew Ltd. v. Ferris Corp.*, No. 86- C 5461, 1987 WL 7496, at *2 (N.D. Ill. Feb. 27, 1987) ("The manufacturer is clearly in the best position to either defend against a claim of infringement or to affirmatively assert invalidity of the holder's patent," and "[presumably]" "has the more detailed knowledge regarding the claim of infringement, the expertise in the area, and the primary interest in the outcome of the litigation.") (citation and internal quotation marks omitted). Furthermore, it has been well established that a "party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product." *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006); *Nintendo*, 756 F.3d at 1366. Consequently, as discussed above, if the claims of the Patents-in-Suit are found to be not invalid and infringed in the manufacturer litigation, Wapp's award of any damages against the manufacturers would preclude any "double recovery" against Bank of America. *Saint Lawrence*, 2017 WL 3712912, at *2.

Accordingly, these three factors only further weigh in favor of staying this case against Bank of America.

## IV. CONCLUSION

Based on the foregoing, Bank of America respectfully requests that the Court grant this motion and stay this action pending final resolution of the manufacturer litigation involving Seattle SpinCo and EntIT Software or Micro Focus International plc, whichever is the suit to go forward.

Dated: October 17, 2018

Respectfully submitted,

By:  */s/ Mark N. Reiter*

Mark Reiter
Lead Counsel
State Bar No. 16759900
mreiter@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201-6912
Telephone: 214.698.3360
Facsimile: 214.571.2907

Neema Jalali
California State Bar No. 245424
njalali@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Tel: 415.393-8224
Fax: 415.374-8436

*Attorney for Bank of America Corporation*

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for the parties conferred by telephone on October 15, 2018.  I attended on behalf of Bank of America, and Jeffrey Toler attended on behalf of Wapp.  Counsel discussed the issues related to this motion, and Mr. Reiter referred Mr. Toler to the case law supporting that the instant action should be stayed in view of the manufacturer cases.  Despite that case law, Mr. Toler disagreed that this action should be stayed.  These discussions have ended in an impasse, which leaves the stay issue open for the Court to resolve.

*/s/ Mark N. Reiter*
Mark Reiter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants in this case.

*/s/ Mark N. Reiter*
Mark Reiter

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

|  |  |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | Case No. 4:18-cv-00519-ALM-KPJ |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| BANK OF AMERICA CORPORATION, | |
| Defendant. | |

**<u>DECLARATION OF DAVID MATTHEWS</u>**

I, David Matthews, hereby declare as follows:

1.      I am an employee of Bank of America, N.A., which is a wholly-owned subsidiary of Bank of America Corporation.  I understand that Bank of America Corporation is a holding company, not an operating company.  I have been an employee of Bank of America, N.A. since June 2011.  The facts set forth herein are true and correct, and are based on my own personal knowledge.  If called upon to testify as a witness, I could and would competently testify thereto.

2.      My title at Bank of America, N.A. is Senior Technology Executive for Enterprise Technology, Architecture, and Shared Capabilities.  As part of my duties in that position, I am responsible for the strategy, implementation, and support of software testing automation tools used by Bank of America, N.A.

3.      I understand that the plaintiffs in this lawsuit have identified the following alleged products and functionalities:  "HP StormRunner Load"; "HP Mobile Center"; "LoadRunner"; "HP LoadRunner, HP Performance Center, Shunra Network Virtualization, HP Network Virtualization engine, HP Network Virtualization for Mobile, HP Network Capture, and/or any Micro Focus products related to any of the foregoing"; "Micro Focus TruClient Native Mobile"; and "Micro Focus Mobile Center."

4.      To the extent Bank of America, N.A. understands what the software products and functionalities referenced above in Paragraph 3 are, Bank of America, N.A. does not manufacture, import, sell, or offer to sell any such software, and has never done so.  Nor has Bank of America, N.A. ever had any role in designing, developing, producing, or maintaining any such software.  Rather, to the extent Bank of America, N.A. has used any such software, while Bank of America, N.A. may provide requirements to the vendor, Bank of America, N.A. is merely a customer of the software.

5.      To the extent Bank of America, N.A. has used such software products and func-

tionalities, Bank of America, N.A. uses them consistent with their general purpose.  Such use has

only been "off the shelf."  That is, Bank of America, N.A. does not modify the software in any

way.  Further, I am not aware of any way in which Bank of America, N.A. could modify the code

in the software, nor would Bank of America, N.A. permit such modifications to be made even if it

were possible to do so.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on October **17**, 2018.

David Matthews

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

WAPP TECH LIMITED PARTNERSHIP
and WAPP TECH CORP.,

        Plaintiffs,

        v.

BANK OF AMERICA CORPORATION,

        Defendant.

Case No. 4:18-cv-00519-ALM-KPJ

**JURY TRIAL DEMANDED**

### [PROPOSED] ORDER GRANTING
### DEFENDANT BANK OF AMERICA CORPORATION'S MOTION TO STAY

Before the Court is Defendant Bank of America Corporation's Motion to Stay. Having considered the relevant authorities, the parties' briefing, and oral argument in support of and in opposition to the Motion, the Court orders that Bank of America Corporation's Motion to Stay is hereby **GRANTED**. This action is stayed pending final resolution of the manufacturer litigation involving Seattle SpinCo, Inc. and EntIT Software LLC (*Seattle SpinCo, Inc. v. Wapp Tech Ltd. P'ship*, No. 1:18-cv-01585-UNA (D. Del.)) or Micro Focus International plc (No. 4:18-cv-00469-ALM (E.D. Tex.)), whichever is the suit to go forward.

        **IT IS SO ORDERED.**