# EXHIBIT 10

```
                  UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF TEXAS
                       SHERMAN DIVISION

 WAPP TECH LIMITED PARTNERSHIP    | DOCKET 4:18CV469
 AND WAPP TECH CORP.              |
                                  | MARCH 1, 2021
 VS.                              |
                                  | 10:01 A.M.
                                  |
 SEATTLE SPINCO, INC., ET AL      | SHERMAN, TEXAS

-----------------------------------------------------------------

       VOLUME 1 MORNING OF __, PAGES 1 THROUGH 101

   REPORTER'S TRANSCRIPT OF JURY TRIAL, MORNING SESSION


          BEFORE THE HONORABLE AMOS L. MAZZANT, III
            UNITED STATES DISTRICT JUDGE, AND A JURY

-----------------------------------------------------------------


APPEARANCES:

FOR THE PLAINTIFFS:

                 DERON R. DACUS
                 THE DACUS FIRM
                 821 ESE LOOP 323, SUITE 430
                 TYLER, TEXAS  75701

                 ROBERT F. KRAMER
                 MARGARET ELIZABETH DAY
                 DAVID L. ALBERTI
                 SAL LIM
                 RUSSELL STEVEN TONKOVICH
                 MARC C. BELLOLI
                 SVEN RAZ
                 ANDREW GRANT HAMILL
                 ROBERT Y. XIE
                 FEINBERG DAY KRAMER ALBERTI LIM
                 TONKOVICH & BELLOLI
                 577 AIRPORT BOULEVARD, SUITE 250
                 BIRLINGAME, CALIFORNIA  94010
```

```
 1  FOR THE DEFENDANTS:

 2                      HARRY LEE GILLAM, JR.
                        ANDREW THOMPSON "TOM" GORHAM
 3                      GILLAM & SMITH
                        303 SOUTH WASHINGTON AVENUE
 4                      MARSHALL, TEXAS   75670

 5                      L. REX SEARS
                        ALEXIS K. JUERGENS
 6                      MASCHOFF BRENNAN - SALT LAKE CITY
                        111 SOUTH MAIN STREET, SUITE 600
 7                      SALT LAKE CITY, UTAH   84111

 8                      BARRY KENNETH SHELTON
                        BRADLEY DALTON COBURN
 9                      SHELTON COBURN LLP
                        311 RR 620 SOUTH, SUITE 205
10                      AUSTIN, TEXAS   78734-4775

11

12  COURT REPORTER:     CHRISTINA L. BICKHAM, CRR, RDR
                        FEDERAL OFFICIAL REPORTER
13                      101 EAST PECAN
                        SHERMAN, TEXAS   75090
14

15

16
        PROCEEDINGS RECORDED USING MECHANICAL STENOGRAPHY;
17    TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
```

```
05:38:50   1   me.
05:38:50   2            THE COURT:  Okay.  That's fine.  And I -- my staff
05:38:52   3   just gave me -- do you want to know the totals of what you
05:38:55   4   have left?
05:38:56   5            MR. DACUS:  Please.
05:38:56   6            MR. SEARS:  Please.
05:38:57   7            THE COURT:  Plaintiff has 3 hours 49 minutes, and
05:38:59   8   the defense has 4 hours 8 minutes.
05:39:03   9            MR. SEARS:  4:08?
05:39:04  10            THE COURT:  4:08, yes.
05:39:05  11            MR. SEARS:  Thank you.
05:39:06  12            THE COURT:  No, that's fine.  So I'm going to have
05:39:08  13   my lawyer, when we recess today, to give you copies of the
05:39:12  14   charge and everything.  So I think we'll plan on just
05:39:15  15   meeting after we finish tomorrow, in chambers, to have an
05:39:19  16   informal charge conference tomorrow evening, after we
05:39:22  17   finish, just so that we're ready to go on -- and I know
05:39:25  18   there were some disputes among the parties.  I made my
05:39:27  19   calls on those.  You can certainly -- we can talk about
05:39:30  20   those tomorrow, whether you agree or disagree with those
05:39:33  21   calls that I've made.  But we'll do that informally after
05:39:36  22   we're done tomorrow.
05:39:36  23            Okay.  Anything else, then?
05:39:38  24            MR. DACUS:  No, your Honor.
05:39:39  25            THE COURT:  Okay.  Okay.  We will be in recess,
```

```
03:01:24   1  before we recess?
03:01:26   2              MR. DACUS:  No, your Honor.
03:01:26   3              THE COURT:  Defense?
03:01:27   4              MR. SHELTON:  No, your Honor.
03:01:28   5              THE COURT:  Do y'all want the totals that are
03:01:31   6  left?
03:01:31   7              MR. DACUS:  That would be great.
03:01:32   8              THE COURT:  Okay.  Plaintiff has 2 hours and 20
03:01:35   9  minutes left.  Defense has 1 hour and 19 minutes.
03:01:39  10              MR. SHELTON:  Thank you, your Honor.
03:01:40  11              THE COURT:  Okay.  See you back in 15.
03:01:42  12              (Recess, 3:01 p.m. to 3:19 p.m.)
          13              (Open court, all parties present, jury not
03:19:06  14  present.)
03:19:06  15              MR. SHELTON:  Your Honor, we have an issue, first.
03:19:12  16              THE COURT:  Hold on a second.
03:19:12  17              Yes.
03:19:12  18              MR. SHELTON:  Your Honor, the last exhibit that
03:19:14  19  was used -- it's not even an exhibit, hence the problem.  I
03:19:17  20  didn't -- I didn't notice or I didn't hear that there
03:19:19  21  wasn't an exhibit number, and I wasn't given this exhibit.
03:19:23  22              And so when your Honor started the break, I went
03:19:28  23  to Mr. Alberti and I said, you know, what is this?  Because
03:19:33  24  we looked at the transcript, and there was no exhibit
          25  number.
```

```
05:32:38  1   agree that JMOLs can be made orally?
05:32:42  2             MR. DACUS:  We have no objection to that, your
05:32:43  3   Honor.
05:32:45  4             MR. SEARS:  Okay.  Great.  Thank you.  Thank you.
05:32:47  5   I had spoken with Mr. Raz earlier.  He --
05:32:50  6             THE COURT:  That's fine.  I've done it both ways.
05:32:52  7   That's not a problem.
05:32:53  8             And then do we have a couple attorneys who are
05:32:55  9   going to handle the charge conference and -- let me ask you
05:32:59  10  to -- this is your last witness, I presume?
05:33:02  11            MR. SEARS:  Correct.
05:33:02  12            THE COURT:  Okay.  And then is there anybody in
05:33:05  13  rebuttal?
05:33:05  14            MR. DACUS:  Yes, your Honor.  We've probably got
05:33:07  15  an hour and 15 minutes of rebuttal, hour -- whatever we
05:33:10  16  have left, that's what we have.
05:33:11  17            THE COURT:  You have the time, so --
05:33:13  18            MR. DACUS:  Right.
05:33:13  19            THE COURT:  Let me get -- I know plaintiff has 11
05:33:16  20  minutes left.  Defense has an hour 30 -- I mean, plaintiff
05:33:22  21  has an hour 30, and defense has 11 minutes.
05:33:27  22            MR. SEARS:  Dang.  I was hoping we --
05:33:29  23            THE COURT:  Sorry.  I said that wrong the first
05:33:31  24  time.  Sorry.
05:33:32  25            Okay.  Well, if you need a break, if you want to
```

```
05:33:34   1   use the facilities or whatever, and then my lawyer can
05:33:37   2   bring you back here in like five minutes, and then we'll do
05:33:42   3   that in chambers.
           4           (Proceedings adjourned, 5:34 p.m.)
           5   COURT REPORTER'S CERTIFICATION
           6           I HEREBY CERTIFY THAT ON THIS DATE, MARCH 4,
               2021, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD
           7   OF PROCEEDINGS.
           8                   /s/
                           CHRISTINA L. BICKHAM, CRR, RDR
           9
          10           ----------------------------------
          11
          12
                                       INDEX
          13
          14                                                         PAGE
          15   CONTINUED DEPOSITION TESTIMONY OF ERAN BACHAR          988
          16   DIRECT EXAMINATION OF MATTHEW SHOEMAKE                1004
          17   CROSS-EXAMINATION OF MATTHEW SHOEMAKE                 1060
          18   REDIRECT EXAMINATION OF MATTHEW SHOEMAKE              1099
          19   QUESTIONS FROM THE JURY                               1101
          20   DIRECT EXAMINATION OF DANIEL VAN DER WEIDE            1102
          21   CROSS-EXAMINATION OF DANIEL VAN DER WEIDE             1129
          22   QUESTIONS FROM THE JURY                               1135
          23   DIRECT EXAMINATION OF CLARKE NELSON                   1137
          24   CROSS-EXAMINATION OF CLARKE NELSON                    1161
          25   COURT REPORTER'S CERTIFICATION                        1197
```

Christina L. Bickham, CRR, RDR
(409) 654-2891

Case 4:21-cv-00467-ALM Document 478-1 Filed 03/04/25 Page 4 of 20 PageID #: 16980
Case 4:21-cv-00467-ALM Document 447-11 Filed 03/01/22 Page 74 of 182 PageID #: 15980
Jury Trial, Volume 5                            1271

1  concerned that we're about to hear that hardware is
2  required for the claim.  That's where the questions were
3  going this morning, in a very skilled and roundabout way.
4  That's where this argument lies.  And the Court has said
5  very clearly that it's not.
6           So I just raise it because I don't want to have to
7  stand up in the middle of a closing.
8           THE COURT:  I understand.
9           And I stand by the Court's ruling, and I'm going
10 to overrule your motion.
11          MR. COBURN:  Thank you, your Honor.
12          THE COURT:  Anything else?
13          MR. COBURN:  That's all I have, your Honor.
14          THE COURT:  Okay.  Anything from the plaintiffs?
15          MR. BELLOLI:  Yes, your Honor.  First, the 50(a)
16 on invalidity under 102 and 103.
17          The defense expert didn't point to a single
18 limitation in any asserted claim and point to where any
19 limitation may be found in the prior art references.
20 That's insufficient.
21          Generalized and conclusory statements about prior
22 art and invalidity are not sufficient to survive a
23 Rule 50(a) motion.  The *Fresenius* case is directly on point
24 here.  That's 582 F.3d 1288 at 1300.  That's the Federal
25 Circuit in 2009.

    1              There's tons of cases on point, as we've provided
    2   them to chambers.
    3              But there was nothing.  There was really no
    4   invalidity case put on here as to 102 and 103.  And the
    5   *Frensenius* case says, you know, if an expert fails to
    6   identify where one limitation is missing in the prior art.
    7   So they do all the limitations but one and don't point to
    8   that, the opinion is out; the art is out.
    9              And, here, we have a complete failure on any
   10   limitation to describe where they are in the prior art and
   11   link it in any way.  No claim was pointed to.
   12              And just another point in the case law.  There is
   13   a lot of case law saying expert testimony is required for
   14   these matters of infringement and invalidity when they are
   15   of a technical nature like this.  And while there is expert
   16   testimony -- not on these points, so they can't just put
   17   the two documents, the two prior references, before the
   18   jury and say, look, we think they are invalid, that would
   19   be improper.
   20              So that's the motion as to 102 and 103.
   21              As to 112, there was enablement and written
   22   description.  Same issue.  Generalized and conclusory
   23   testimony is not sufficient for both flavors of 112 that
   24   they are proffering.
   25              There is no specific reference in the transcript

Case 4:21-cv-00467-ALM  Document 478-1  Filed 03/04/25  Page 76 of 183 PageID #: 15082
Case 4:21-cv-00467-ALM  Document 447-1  Filed 03/04/22  Page 10 of 20 PageID #: 15082
Jury Trial, Volume 5                                           1273

```
 1  to any claim or claim limitation.  He just kind of says:  I
 2  don't think this concept has support.  But he doesn't link
 3  it to any asserted claim or claim limitation.
 4          And so, under the WBIP case, the Streck case, the
 5  CytoLogix case, the Alcon case, these four cases we
 6  submitted to chambers, both of these defenses should go out
 7  as well.
 8          One more reason to get rid of the enablement
 9  defense is that there is -- they never addressed the fact
10  that -- whether or not a person of ordinary skill in the
11  art could enable or, you know, use the invention without
12  undue experimentation.
13          And there's case law -- and, in fact, the Alcon
14  case, 745 F.3d 1180 -- I don't have the pinned cite, I'm
15  sorry -- Federal Circuit 2014, that says when you don't
16  address that issue JMOL is proper on enablement as well.
17          Sorry, a lot of concepts here this morning.
18          And, you know, finally, I think there may even be
19  an implicit admission by defendants on this because the
20  only case law they submitted was on written description,
21  not 102, 103, or enablement.
22          And the one case they cite, the Synthes case, is
23  not a 50(a) motion.  It's where a Court found that --
24  affirmatively found, made a finding, like on summary
25  judgment or posttrial briefing, that, you know, as a matter
```

```
 1  of law, the Court found that written description was
 2  lacking.  It's not sufficiency of evidence or argument case
 3  under Rule 50.
 4           And, again, we just think that it was way too
 5  general, way too conclusory; and, most importantly, just
 6  not directing the jury to any claim or claim limitation in
 7  making the argument.  So we think the whole invalidity case
 8  fails as a matter of law.
 9           THE COURT:  Thank you.
10           Response?
11           MR. SHELTON:  Thank you, your Honor.
12           I will freely admit that, as to Section 102, 103,
13  and validity, the examination was limited by our time
14  constraints.  And so I want to focus your Honor on the
15  Section 112 written description aspect of the invalidity
16  case.
17           And, there, I don't think there is any question
18  that Dr. van der Weide did provide detailed analysis.  And
19  it wasn't necessary, because of the nature of the written
20  description defense here, to go into the claims and go
21  element by element, because the issue there was -- and it
22  was clearly framed in each of the questions that were posed
23  to Dr. van der Weide -- was whether the asserted claims
24  were supported by the specification with regard to whether
25  the mobile device that's tested in the claims could be a
```

1  real mobile device.
2          So that was stated precisely as the predicate for
3  each of the questions.  And Dr. van der Weide -- so there's
4  11 pages in the trial transcript, your Honor, starting on
5  page 1120 yesterday.  And in each case, Dr. van der Weide
6  went through the four passages in the patents, and that
7  same language is in each of the patents that are asserted,
8  and Figures 1A and Figure 7.  And Dr. van der Weide
9  explained that each passage that the parties agreed
10 constitutes the sole disclosure of testing on a physical
11 mobile device.
12         And Dr. van der Weide presented opinion testimony,
13 consistent with his expert report, that the written
14 description requirement was not met.  So I can't imagine
15 what more he could have presented to the jury to allow a
16 finding that the written description requirement has not
17 been met here.
18         THE COURT:  And let me ask:  Are you conceding
19 anticipation and obviousness?
20         MR. SHELTON:  Yes, your Honor.
21         THE COURT:  Okay.  So based on your conceding
22 that, I will grant the motion as to those two.
23         And then do you want to respond to the written
24 description?
25         MR. BELLOLI:  Are you conceding enablement as

Case 4:21-cv-00469-ALM Document 478-1 Filed 03/04/22 Page 79 of 162 PageID #: 15035
Case 4:21-cv-00469-ALM Document 447-1 Filed 03/04/22 Page 13 of 20 PageID #: 17035
Jury Trial, Volume 5                    1276

```
 1   well?
 2              MR. SHELTON:  We'll concede enablement.
 3              MR. BELLOLI:  Okay.  So with written description
 4   again, it's just naked testimony about sections of the
 5   specification and figures.  It's not tied to any claim.
 6              He's not asked, you know, is this claim limitation
 7   lacking support.  And it's just a couple of pages of the
 8   trial transcript.  It's page 1120 to -- 1120 for both
 9   enablement and written description, so that's not all of
10   it.
11              But, again, there is just no linking, and it's
12   conclusory testimony.  It's just:  Does this
13   specification -- does this cite support your opinion,
14   essentially?  Yes.
15              Does this figure support your opinion?  Yes.
16              And then it's just conclusory.  There is no
17   explanation.  You have to explain why the written
18   description is lacking.
19              And, again, under the cases we submitted, such
20   high-level generalized conclusory testimony is just not
21   sufficient.
22              But I really think that where you can cut it off
23   is it is just never linked to any claim in this case.  He
24   didn't give an opinion that this claim, this element,
25   lacking written description.
```

 1            And I would really just submit that there is nine
 2   pages.  They are a pretty quick read.  And if the Court
 3   sees those nine pages, it will agree that this was cursory
 4   and not sufficient and not pointing to any claim or claim
 5   limitation.
 6            MR. SHELTON:  Your Honor, I would make the same
 7   suggestion to the Court, that your Honor read the nine
 8   pages.  And you will see that for each of the four
 9   passages, Dr. van der Weide wasn't just asked, does this
10   support your opinion, which would be cursory and
11   conclusory.
12            But, instead, he was asked, what would this teach
13   a person of ordinary skill in the art and then is that
14   sufficient, in your opinion, to show that the inventor
15   possessed the full scope of the invention, which this Court
16   has decreed involves testing on both emulated mobile
17   devices and real mobile devices.
18            So if your Honor took, you know, a moment to read
19   this testimony, I think you will see -- and, of course, you
20   were here -- that that was more than ample support for the
21   jury to find that the written description requirement has
22   not been met for any of the six claims.
23            MR. BELLOLI:  Okay.  Last thing, your Honor, are
24   just the slides that they showed.
25            Okay.  All the slide says, was the inventor in

1    possession of the claimed invention?  And it points to,
2    like, a figure.  It just points to figures.  They never
3    link it to any claim.  They never link it to any claim in
4    any way, shape, or form or specific claim limitation.
5           You have to have a claim limitation that fails the
6    written description requirement of 112, and they just don't
7    do it.
8           I don't know -- really, other than to formally
9    brief this, I don't know how to put it out -- or to have
10   the Court review the testimony and make a determination if
11   it's too general, too conclusory, too cursory, and not
12   linked to any claim or claim limitation.  I think that's --
13          MR. SHELTON:  Your Honor, may I read one question?
14          THE COURT:  Go ahead.
15          MR. SHELTON:  And this is from the -- this is the
16   first element -- I'm sorry -- the first passage.
17          So I asked Dr. van der Weide --
18          MR. BELLOLI:  What page again?
19          MR. SHELTON:  I haven't said.
20          Trial transcript 1121, starting on line 18.  And I
21   asked Dr. van der Weide:  "And what I'm going to do, sir,
22   is I'm going to take you through each of those; and I'm
23   going to ask you if, in your opinion, the passage will
24   demonstrate to a person of ordinary skill in the art at the
25   time of the invention that the inventor, Mr. Poulin,

1  actually invented the concept of meeting all the claim
2  limitations that are asserted in this case but using a real
3  mobile device as opposed to an emulator."
4           I mean, that sets the full necessary predicate.
5  It's not conclusory, and it --
6           And then, in his answer --
7           THE COURT: Well, let me ask you: I mean, how
8  does that meet clear and convincing evidence? You have to
9  show that by clear and convincing evidence. And so how
10 does that one question get you there?
11          MR. SHELTON: How does -- I'm sorry. What?
12          THE COURT: I mean, you have to show by clear and
13 convincing evidence. And so, those nine pages and that
14 question and answer you just gave me, how does that get you
15 there?
16          MR. SHELTON: I just read the question, sir. I
17 didn't read the answer.
18          THE COURT: Well, I understand. But, I mean...
19          MR. SHELTON: Well, when you're talking about
20 written description, it supports that something is missing.
21 And the parties agree that there is only four passages. He
22 went through all four.
23          And his opinion was that it's not sufficient to
24 show.
25          And he used Figure 1A and showed, for example,

1  that the authoring environment -- the authoring tool has a
2  one-way arrow to the mobile device.  It's not two-way.
3          And there's -- I mean, Dr. Malek admitted on
4  cross-examination on Tuesday that every embodiment, every
5  embodiment of all three patents, deals only with the
6  emulator.  That's their expert.  He admitted that.
7          So there is no embodiment that teaches testing on
8  a real mobile device that would meet the claim limitations,
9  and the only four passages that the parties agree have
10 anything to do with a real mobile device have been shown by
11 a qualified expert to not have anything to do with meeting
12 the limitations of the claims.
13         I can't imagine what more could have been done.
14 And I think, your Honor, that it more than meets the clear
15 and convincing evidence standard.
16         MR. BELLOLI:  I think the question he asked and
17 read, your Honor, as his best evidence of a question just
18 says, did Mr. Poulin actually -- I mean, he's asking him
19 basically did Mr. Poulin actually invent the concept of
20 meeting all claim limitations that are asserted in this
21 case.
22         You know, might as well just put the patent in
23 front of the jury and say, hey, you figure out if a written
24 description is here.
25         THE COURT:  Okay.  Well, of course, the Court

1  hates pulling things away from the jury.  But in this
2  situation I just don't see how the defense gets there,
3  because the written description requires potential evidence
4  that's not conclusory.  And that's the problem, is the
5  evidence you have is conclusory.
6           And, of course, in the case that's been cited to
7  the Court, in *WBIP* 829 F.3d 1317, the Federal Circuit
8  affirmed the District Court's denial of JMOL that the
9  asserted claims lack written description.
10          There, the written description defense went to the
11 jury, which found for the plaintiff.  Defense appealed and
12 argued the JMOL should have been granted.
13          While this is not in the same procedural stance,
14 because the Court is faced with granting plaintiffs' JMOL
15 as opposed to denying defendants' on invalidity, the
16 Federal Circuit discussed the expert's testimony and
17 explained why it was legally insufficient.
18          In *WBIP* the expert answered three questions on
19 written description.  The attorney was doing more
20 testifying than the expert, as the attorney asked long,
21 leading questions; and the expert replied succinctly and
22 referred back to the slides.
23          The Federal Circuit said that the defendant never
24 presented the jury with the detailed argument required to
25 establish invalidity by written description.

1          The Federal Circuit called this general conclusory
2    testimony that does not suffice as substantial evidence of
3    invalidity.  This evidence does not rise to the level of
4    clear and convincing evidence, is a quote from the Federal
5    Circuit.
6          Similarly, in this case, the defendants' expert
7    addressed written description in, really, a quick fashion.
8    While, in this case, it's more than three questions, it was
9    approximately just five minutes of his testimony, total.
10         The attorney on direct examination asked long,
11   leading questions, designed to speed things up.  And the
12   defendants' expert referred back to his slides so much that
13   the transcript does not clearly state his opinions.  This
14   is the type of general, conclusory testimony that is
15   legally insufficient to demonstrate invalidity.
16         And I looked at the case y'all had cited, and I've
17   looked at the testimony as well.  The case you cited -- is
18   it -- I'm not -- it's S-Y-N-T-H-E-S.  It was very
19   different, and it had a lot more detailed testimony than we
20   have in this case.
21         So I am going to grant the plaintiffs' motion and
22   exclude the written description defense from going to the
23   jury.
24         Anything else?
25         MR. BELLOLI:  We do have kind of a four-part 50(a)

Case 4:21-cv-00469-ALM Document 47-1 Filed 03/04/22 Page 20 of 20 PageID #: 1518
Case 4:21-cv-00469-ALM Document 43-1 Filed 03/25/22 Page 20 of 20 PageID #: 1518
Jury Trial, Volume 5                    1379

1  way, I'll come down and talk to you.

2          And we'll be in recess.  Thank you.

3          (Proceedings concluded, 3:29 p.m.)

4  <u>COURT REPORTER'S CERTIFICATION</u>

5          I HEREBY CERTIFY THAT ON THIS DATE, MARCH 5,

6  2021, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD

7  OF PROCEEDINGS.

8

9                          ____/s/_____
                           CHRISTINA L. BICKHAM, CRR, RDR
10