**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | |
| Plaintiffs, | Case No. 4:21-cv-00670-ALM |
| v. | |
| BANK OF AMERICA N.A., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## <u>DEFENDANT BANK OF AMERICA'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL</u>

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.    Wapp's Asserted Patents Claim Simulator Tools, Not Mobile Applications ......... 2

    B.    The Accused Apple/Google Simulator Tools ........................................................ 3

    C.    BofA's Use of Non-Infringing Alternatives and Limited Use of the Accused Products ................................................................................................... 3

    D.    Procedural History and BofA's Damages-Related Discovery ............................... 5

III.    ARGUMENT ...................................................................................................... 6

    A.    Discovery Regarding Transactions Data Is Irrelevant and Untethered to Any Legally Recognized Damages Theory ......................................................... 6

        1.    The Foundation of Wapp's Relevance Claim Is Unsupported and Demonstrably Incorrect ............................................................................... 6

        2.    The *Georgia Pacific* Factors and the Entire Market Value Rule Demonstrate That Wapp's Requested Discovery Is Overbroad ................. 7

        3.    The Court's Prior Rulings Did Not Order Production of the Discovery Wapp Now Seeks ...................................................................... 9

    B.    Discovery Regarding Profits from Mobile-Enrolled and Non-Mobile-Enrolled Customers Is Irrelevant ......................................................................... 9

    C.    Discovery Regarding Bank Branch Closures Is Irrelevant ................................. 10

IV.    CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Metaswitch Networks Ltd. v. Genband US LLC*,
   No. 2:14-CV-744-JRG, 2016 WL 874737 (E.D. Tex. Mar. 5, 2016)............................. 10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   904 F.3d 965 (Fed. Cir. 2018) ........................................................................................ 8

*Sprint Commc'ns Co. L.P. v. Cequel Commc'ns, LLC*,
   No. CV 18-1752-RGA, 2022 WL 1801433 (D. Del. June 2, 2022) ................................ 10

## I.       INTRODUCTION

Wapp does ***not*** allege any function or feature of Bank of America's mobile banking application infringes any claim or claim limitation of any asserted patent.  Rather, Wapp's asserted patents relate to mobile application ***testing*** using emulators, and Wapp alleges infringement based on Bank of America's alleged use of certain simulator tools developed by Apple and Google.  Bank of America already has provided discovery about its use of the accused Apple/Google simulator tools.  Now, even though Wapp does not contend that the app or its functionality infringe its patents, Wapp seeks to go well beyond the accused tools and obtain broad and invasive discovery on topics that are multiple steps removed from the alleged infringement.

Wapp seeks discovery of how often Bank of America's customers deposit checks, perform money transfers, and check their balances on the Bank of America mobile app.  Wapp seeks discovery on the Bank's profits from customers enrolled versus not enrolled in mobile banking, without regard to whether those profits are related to use of the accused tools (and even without regard to connection with the mobile applications).  And Wapp seeks discovery regarding bank branch closures purportedly caused by use of the mobile applications.  Wapp seeks discovery on *all* these areas despite the fact that the asserted patents only relate to ***testing*** mobile applications by using emulators.  Wapp attempts to justify its discovery based on a doubly-overreaching damages theory, seeking information not just about the entire market value of the accused tools but also the entire market value of unaccused customer transactions performed on the unaccused mobile applications.

Only conclusory assertions by a non-technical testifying expert support Wapp's assertion of a connection between the accused testing tools and mobile check deposits and bank branch closures.  Wapp's ***damages*** expert says without support he "understands" that Wapp's patents are "foundational to developing, testing, and maintaining mobile apps" and that there is no other

1

"commercially viable way to develop and test mobile banking apps."  Ex. 11, Weinstein Decl. ¶ 6. Wapp's damages expert is not qualified to opine on technical alternatives to the patents-in-suit. Indeed, his conclusory assertion is just not true.  Bank of America has provided extensive discovery establishing that Bank of America's mobile application testing predominately happens on physical devices (e.g., smartphones), not in the accused Apple/Google simulator tools.  Moreover, as Wapp knows, Bank of America primarily uses its own, unaccused testing source code and scripts to test mobile applications on these physical devices.  Wapp's motion does not address these facts.

Because the discovery sought by Wapp is too far removed from the patents-in-suit and the accused Apple/Google simulator tools, the Court should deny Wapp's requests.

## II.     FACTUAL BACKGROUND

### A.     Wapp's Asserted Patents Claim Simulator Tools, Not Mobile Applications

Wapp asserts five related patents directed to specific technology for ***testing*** mobile applications using simulators and resource monitors.  A simulator allows a mobile application to be run and tested in a development environment without loading the application on an actual physical mobile device.  Claim 1 of the '811 patent is representative:

> 1. A non-transitory, computer-readable medium comprising software instructions ***for developing an application to be run on a mobile device***, wherein the software instructions, when executed, cause a computer to:
> display a list of a plurality of mobile device models from which a user can select, wherein each model includes one or more characteristics indicative of a corresponding mobile device;
> ***simulate at least one of the one or more characteristics indicative of the mobile device*** corresponding to the selected mobile device model;
> ***simulate one or more characteristics indicative of a network*** on which the mobile device corresponding to the selected mobile device model can operate;
> ***monitor utilization of a plurality of resources*** over time as the application is running;

> ***display simultaneously*** two or more graphical images of
> the application's resource utilization, wherein each graphical
> image relates to a different resource;
> ***correspond the utilization*** of a specific displayed resource
> at a given time with one or more functions of the application
> responsible for that utilization.

Ex. A, '811 Patent at claim 1 (emphasis added).  Claim 1 of the '811 patent thus requires a number of specific elements for developing a mobile application, including: (1) simulating characteristics of a device, (2) simulating characteristics of a network, (3) monitoring and displaying a plurality of resources, and (4) corresponding resource usage with specific functions of the application.  *Id.*

### B.      The Accused Apple/Google Simulator Tools

Wapp does not allege any aspect of Bank of America's mobile applications infringe Wapp's patents.  *See, e.g.*, Exs. B and C.  Wapp ***only*** accuses technology developed by Apple and Google.  Apple provides the accused Xcode product, which includes the allegedly infringing Xcode simulator and activity monitors that allow a developer to run an application on a simulated version of an iOS device.  *See* Ex. B, Wapp's Infringement Contentions against Xcode.  Similarly, Google provides the accused Android Studio product, which includes the allegedly infringing Android emulator and profiler tools that allow a developer to run an application on an emulated Android device.  *See* Ex. C, Wapp's Infringement Contentions against Android Studio.  Neither the simulators nor the monitoring tools are needed to write or release mobile applications.

### C.      BofA's Use of Non-Infringing Alternatives and Limited Use of the Accused
###          Products

The lynchpin of Wapp's argument for the relevance of the disputed discovery is this unsupported statement of the damages expert:

> I also understand that the Wapp Tech patents asserted against Bank of America are
> foundational to developing, testing, and maintaining mobile apps, including mobile
> banking apps offered by Bank of America.  ***I am not presently aware of any other
> commercially viable way to develop and test mobile banking apps that does not
> infringe Wapp's patents***.

Ex. 11, Weinstein Decl. ¶ 6 (emphasis added).

But Wapp already knows that numerous noninfringing alternatives exist, including noninfringing technology that is predominantly used by Bank of America.  Bank of America identified dozens of commercially available mobile application simulator tools that are noninfringing, and has produced over 52,000 pages of documents describing these noninfringing alternatives.  *See* Ex. D, Resps. to Wapp's Interrog. No. 8; Trac Decl. ¶ 14.  In fact, both Apple and Google explain that their simulators are not substitutes for physical devices and that mobile applications should be tested on physical devices prior to release.  *See* Ex. G; Ex. H.

Further, as explained by Bank of America's deponents and as spelled out in interrogatory responses, Bank of America's use of the accused Apple/Google simulator tools is very limited.  Bank of America primarily uses noninfringing alternatives, including:

- Mobile application testing on physical devices in the possession of the developer;

- Mobile application testing using cloud-connected and network-connected physical devices, including the Perfecto[1] and Mobile Labs services;

- Mobile application testing using source code written and developed by Bank of America.

*See* Ex. D, Resps. to Wapp's Interrog. No. 9; Ex. E, Resps. to Wapp's Interrog. No. 2; Ex. F (Ausaf Tr.) 31:19-32:23.

Wapp's unsupported conclusory technical assertion by a non-technical expert is contradicted by extensive and specific facts from discovery.  The entire foundation for Wapp's approach crumbles upon examination.  And such an unsupported theory cannot justify the broad discovery assault Wapp is attempting on Bank of America.

---

[1] Wapp has expressed an intention to seek leave to amend its infringement contentions to assert infringement based on use of certain features of Perfecto, another simulation tool.  Bank of America, however, has not used Perfecto mobile device simulators.  *See* Ex. D.  Indeed, Bank of America does not presently use ***any*** Perfecto product or service.  *Id.*

**D.     Procedural History and BofA's Damages-Related Discovery**

Wapp came to this Court seeking damages-related discovery at a hearing held on April 21, 2022.  Ex. I, Apr. 21, 2022 Hr'g Tr.  During that hearing, Wapp generally sought information regarding the following four categories:

1.     Use of the actual accused Apple/Google simulator tools;
2.     The mobile applications alleged to be developed using the simulator tools, including the number of users, the number of downloads, and complaints;
3.     Transactions (e.g., check deposits, transfers, and balance inquiries) by Bank of America customers, including the number and value of transactions made using the mobile applications and on other platforms; and
4.     Bank branch closures.

*See* Ex. 2, letter listing Wapp's damages requests.  Bank of America agreed to production of the first category, information about the actual accused simulator tools, leaving the remaining three categories in dispute.  The Court ordered that discovery regarding the second category be produced, while discovery regarding the fourth category, bank branch closures, was denied.  *See* Ex. J, Apr. 21, 2022 Minute Order.  As a result of these orders and agreements, Bank of America has produced over 520 documents and over 8,358 pages of documents relating to damages.  Trac Decl. ¶ 13.

Regarding the third category, the Court instructed that if Wapp wanted to pursue discovery of the number of and value of transactions, such as mobile check deposits, Wapp would need to file a motion to compel.  *Id.*

On June 8, 2022, the Court held a second hearing relating to Wapp's request for additional damages documents.  The disputed requests relate to the following three categories:

- ***Transactions*** conducted using features of the mobile applications that may or may not have been tested using the Apple/Google testing tools, and comparisons of such transactions (relative number and cost) to transactions conducted through other means, such as ATM or tellers;
- Difference between the ***total profits*** generated from customers ***enrolled*** in mobile banking and the customers that are ***not enrolled*** in mobile banking, by month, from application release date to present.

5

- The correlation or causation between mobile banking application usage and ***physical bank branch closures*** or reduction in bank branch construction, including any cost savings resulting from such closures or construction avoidance.

*See* Ex. 8, items 4c-4e, 5, and 10.  Again, the Court instructed that if Wapp wanted to pursue these topics it would need to file a motion to compel.

## III.    ARGUMENT

### A.    Discovery Regarding Transactions Data Is Irrelevant and Untethered to Any Legally Recognized Damages Theory

#### 1.    The Foundation of Wapp's Relevance Claim Is Unsupported and Demonstrably Incorrect

Wapp attempted to support the discovery it seeks by citing the "understanding" by Wapp's ***damages*** expert that Wapp's patents were a necessary ***technology*** for the development of a mobile application and that there were no noninfringing alternatives; the non-technical damages expert also concluded (without citation or analysis) that no mobile application testing could occur without infringement of the patents.  *See* Ex. 11, Apr. 15, 2022 Weinstein Decl. ¶ 6.  Despite Bank of America previously highlighting these huge gaps in Wapp's support, Wapp's motion offers no other support for the claim that its patents are foundational or required for mobile application testing.

Wapp's expert's naked assertion stands in stark contrast to buckets of unrebutted evidence: ***dozens*** of noninfringing tools exist to test mobile applications, including tools that provide access to cloud-connected and network-connected physical devices, which ***cannot*** infringe patents requiring simulation of such devices/networks.  Bank of America performs mobile application testing primarily using technology other than the accused Apple/Google simulator tools (or any simulator), including physical mobile devices in the possession of its developers and physical devices connected on a network.  *Supra* Section II.C.  This is unsurprising since both Apple and Google explain that the most reliable way to test the performance of a mobile application is to test the application on real physical devices, not simulators.  *See* Exs. G and H.  In fact, although Wapp

has stated that it will seek leave to amend its infringement contentions to allege infringement by another testing tool (Perfecto), Wapp does not and cannot contend that the predominant testing used by Bank of America infringes; the Bank's testing includes using physical devices possessed by developers, physical devices available through Mobile Labs testing services, and Bank of America developed test source code.

The centerpiece of Wapp's relevance argument—the idea that the accused Apple/Google simulator tools are foundational to the development of a mobile application—is, thus, simply wrong.  Customers would be able to deposit checks and conduct other transactions via mobile applications even if the accused Apple/Google testing technology was not used and did not exist. Because use of such allegedly infringing testing is not necessary (or even preferred) to develop those applications, discovery about customers' mobile check deposits or other transactions has no relevance to this patent case about mobile application testing.

### 2.  The *Georgia Pacific* Factors and the Entire Market Value Rule Demonstrate That Wapp's Requested Discovery Is Overbroad

Wapp's citation to the *Georgia Pacific* factors only confirms the overreaching nature of Wapp's discovery, especially when the actual text of the *Georgia Pacific* factors is examined.

| Georgia Pacific Factor | This Case |
|---|---|
| Factor 9: "The utility and advantages of ***the patent property*** over the old modes or devices, if any, that had been used for working out similar results." | This factor requires a comparison of the ***patented mobile application simulation*** and testing methodology to the prior art. |
| Factor 12: "The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the ***use of the invention*** or analogous inventions." | This considers the ***portion of the profit or selling price of the accused Apple/Google simulator tools*** (Xcode/Android Studio) that may be customary for the alleged use of the patents. |
| Factor 6: "The ***effect of selling the patented specialty*** in promoting sales of other products of the licensee; that existing value ***of the invention*** to the licensor as a generator of | Bank of America ***does not sell the accused products*** (the Apple/Google simulator tools), making convoyed sales inapposite.  Moreover, there is no evidence tying the invention to the |

| | |
|---|---|
| sales of his non-patented items; and the extent of such derivative or convoyed sales." | transactions conducted using the mobile applications. |
| Factor 8: "The established *profitability of the product made under the patent*; its commercial success; and its current popularity." | The relevant profitability would be the product made under the patent—allegedly the *Apple/Google simulator tools*. |
| Factor 11: "The *extent to which the infringer has made use of the invention*; and any evidence probative of the value of that use." | Bank of America *has provided extensive discovery about the limited use* to which Bank of America has put the accused Apple/Google simulator tools.  Further, there is no evidence tying whatever limited use there may be to the transactions conducted by users. |

Wapp's discovery requests seek information that is multiple steps removed from anything that courts have found to be relevant even under an "entire market value" analysis.  The Federal Circuit has explained that "the entire market value rule is appropriate only when the *patented feature* is the sole driver of customer demand or substantially creates the value of the component parts." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018) (emphasis added).  Here, Wapp has provided no evidence that the accused simulation tools have any impact whatsoever on Bank of America's demand for Xcode and Android Studio, let alone that customers demand Bank of America apps based on the use of Xcode and Android Studio—as opposed to the functionality that Bank of America provides, enabling customers to perform banking tasks 24/7 from wherever they have an internet connection.

And Wapp is attempting to go well beyond the entire market value rule of the accused tools; Wapp is reaching for the entire market value of customer transactions performed on the mobile banking applications.  Despite the unrebutted evidence showing the accused simulation tools are *not* necessary (or even preferred) to develop the mobile banking applications, Wapp presses for discovery about Bank of America customers' use of the mobile application to conduct banking transactions.  Wapp's attempt to make new law with discovery into activities that are at least two steps removed from the accused simulation tools should be rejected.

### 3.  The Court's Prior Rulings Did Not Order Production of the Discovery Wapp Now Seeks

Contrary to Wapp's assertion, the Court did not require Bank of America to provide check deposit information (or any other transaction information) in response to Wapp's interrogatories. The parties were clear that the scope of the interrogatory responses would be coextensive with the Court's decision regarding document production.  *See* Ex. I, Apr. 21, 2022 Hr'g Tr. at 3:8-20.  As a result, at the hearing, all of the parties' arguments were directed toward the scope of document production and not the interrogatories.  *See* Ex. I, *passim*.  The Court ultimately held that discovery regarding the number and value of mobile check deposits would ***not*** be ordered by the Court, subject to Wapp filing a motion to compel on this issue, and the direction to supplement the interrogatories must be viewed in the context of this decision, as agreed by the parties.  *See* Ex. I, Apr. 21, 2022 Hr'g Tr. at 14:18-15:1, 24:20-25; Ex. J, Apr. 21, 2022 Minute Order.

### B.  Discovery Regarding Profits from Mobile-Enrolled and Non-Mobile-Enrolled Customers Is Irrelevant

Wapp's request for discovery regarding ***all*** of Bank of America's customers—whether or not they use the Bank of America mobile banking application—is also completely divorced from Wapp's patents relating to ***testing*** mobile applications.  First, Wapp's requested discovery is irrelevant because use of the mobile banking application does not infringe, and is not alleged to infringe.  Regardless of whether a customer is depositing a check, transferring money, or conducting any other activity on a mobile application, none of that activity is even alleged to infringe.  Thus, discovery about profits derived from non-infringing bank transactions is irrelevant.

Moreover, Wapp's request is not limited to profits derived from transactions conducted using the mobile application.  Instead, Wapp seeks profit information for ***all*** of Bank of America's customers, and a comparison of the profitability of customers that are "enrolled" in—but not necessarily using—mobile banking versus those that are not.  This request for profit information

9

irrespective of whether it is derived from mobile banking transactions goes far beyond anything that might be relevant.  The cases Wapp cites compare profits from infringing and non-infringing products, which is not remotely similar to Wapp's requests here.  *See, e.g.*, *Sprint Commc'ns Co. L.P. v. Cequel Commc'ns, LLC*, No. CV 18-1752-RGA, 2022 WL 1801433, at *1 (D. Del. June 2, 2022) (profit difference between "infringing VoIP telephony and the legacy circuit-switched network"); *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-744-JRG, 2016 WL 874737, at *4 (E.D. Tex. Mar. 5, 2016) (comparing profits from the accused c15 product and the unaccused G9 product).  Wapp seeks to compare profits from two noninfringing sets of customers performing noninfringing activities.  There is no legal support for such discovery requests.

### C.     Discovery Regarding Bank Branch Closures Is Irrelevant

This Court previously rejected Wapp's requested discovery on bank closures (Ex. 2, items 11-13; *see* Ex. J, Apr. 21, 2022 Minute Order), yet Wapp continues to pursue discovery by adding the requirement of a "correlation or causation" to mobile applications.  Ex. 8, item 10.  Once again, this request is several steps removed from Bank of America's alleged use of the Apple/Google simulator tools.  Wapp seeks to examine the "correlation or causation" of admittedly non-infringing mobile applications (that may or may not have been tested with the accused tools) to branch closings.  There is simply no nexus or connection between ***the accused Apple/Google development tools*** and the opening or closing of bank branches and none of the public material Wapp identified in its motion fills this gap or shows any such connection.  Wapp again overreaches by seeking discovery beyond anything that might be relevant and identifies no case that remotely supports the putative relevance of such discovery.

## IV.     CONCLUSION

For the foregoing reasons, Wapp's motion to compel should be denied in its entirety.

Dated: June 21, 2022

Respectfully submitted,

*/s/ Timothy S. Durst*

Timothy S. Durst
Texas State Bar No. 00786924
tdurst@omm.com
**O'MELVENY & MYERS LLP**
2501 North Harwood Street
Suite 1700
Dallas, TX 75201-1663
Telephone: 972-360-1900
Facsimile: 927-360-1901

Marc J. Pensabene (*Pro Hac Vice*)
New York State Bar No. 2656361
mpensabene@omm.com
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: 212-326-2000
Facsimile: 212-326-2061

Darin Snyder (*Pro Hac Vice*)
California State Bar No. 136003
dsnyder@omm.com
Bill Trac (admitted to E.D. Tex.)
California State Bar No. 281437
btrac@omm.com
Rui Li (*Pro Hac Vice*)
California State Bar No. 320332
rli@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

***Attorneys for Bank of America N.A.***

11

**<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a)(3)(A).

         */s/ Timothy S. Durst*
         Timothy S. Durst