# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP § <br> and WAPP TECH CORP., § <br>       *Plaintiff,* § <br> v. § <br> § <br> BANK OF AMERICA, N.A., § <br>       *Defendant.* § | Civil Action No.  4:21-CV-00670 <br> Judge Mazzant |

## ORDER

Pending before the Court is Plaintiffs WAPP Tech Limited Partnership and WAPP Tech Corporation's ("WAPP") Motion to Compel (Dkt. #86).  Having considered the motion and relevant pleadings, the Court finds it should be **GRANTED**.

WAPP has alleged Defendant Bank of America, N.A. ("Bank of America") infringed five of WAPP's patents during the development and testing of its mobile banking application.  On March 17, 2022, WAPP requested thirteen categories of damages-related documents.  Bank of America objected.

On April 21, 2022, the Court held a teleconference regarding WAPP and Bank of America's dispute over the thirteen document requests, in addition to three damages-related interrogatories.  The Court noted the expansive nature of discovery practice in the Eastern District, and stated discovery regarding usage of Bank of America's mobile application was entirely appropriate.  However, Bank of America asked the Court for clarification on whether revenue connected to the mobile application was discoverable given revenue went "beyond usage of the mobile apps."  The Court stated WAPP could file a motion to compel on this issue if the need arose.

On June 14, 2022, WAPP moved for the Court to compel Bank of America to produce

1

three categories of documents (Dkt. #86).  Bank of America responded on June 21, 2022 (Dkt. #89).  WAPP replied on June 24, 2022 (Dkt. #93).

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Court's scheduling order requires that the parties produce, as part of their initial disclosure documents containing, information relevant to the claim or defense of any party.  Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense[.]" E.D. Tex. Civ. R. 26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

WAPP requests the Court compel Bank of America to produce: (1) documents and data that pertain to the features of Bank of America's mobile banking application that is developed and tested through its allegedly infringing activities, and user transactions (*e.g.,* check deposits, transfers, balance inquiries, etc.) performed on the mobile banking application; (2) data showing the difference between Bank of America's profits generated from mobile banking customers versus customers not using mobile banking; and (3) documents that discuss the causation or correlation between mobile banking usage and the reduction of physical bank branches (Dkt. #86). WAPP asserts these documents are relevant to the measure of damages.  Bank of America responds that these documents are irrelevant and "untethered to any legally recognized damages theory"

(Dkt. #89).

In patent infringement cases, damages are calculated by determining a reasonable royalty. *See* 35 U.S.C. § 284 (providing that upon a finding of patent infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer"). A reasonable royalty is determined using the "the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)).

Courts have applied the factors stated in *Georgia-Pacific Corp. v. U.S. Plywood Corp.* in determining the amount of a reasonable royalty:

(1) Royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;
(2) Rates paid by the licensee for the use of other patents comparable to the patent-in-suit;
(3) The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;
(4) The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;
(5) The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;
(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;
(7) The duration of the patent and the term of the license;
(8) The established profitability of the product made under the patent, its commercial success, and its current popularity;
(9) The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;
(10) The nature of the patented invention, character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;
(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;
(13) The portion of the realizable profit creditable to invention as distinguished from non-patented elements, manufacturing process, business risks, or significant features or improvements a by the infringer;
(14) The opinion testimony of qualified experts; and,
(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified by* 446 F.2d 295 (2d Cir. 1971), *cert. dismissed*, 404 U.S. 870 (1971).  The Court finds the requested categories of documents are relevant to at least some of these factors.  Bank of America disagrees.

Bank of America has three arguments for why discovery of transactions-data is irrelevant to WAPP's damages theory.  First, Bank of America focuses on the availability of non-infringing tools that exist to test and develop mobile applications.  However, the fact that other, non-infringing testing and development tools exist does not negate the relevance of the requested information.  Second, pointing to the *Georgia Pacific* factors, Bank of America argues WAPP's request is overbroad.  Bank of America asserts WAPP's request would possibly be relevant under an "entire market value" analysis, but such analysis is not relevant here because "the entire market value rule is appropriate only when the ***patented feature*** is the sole driver of customer demand or substantially creates the value of the component parts."  (Dkt. #89 at p. 8 (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018) (emphasis added)).  While this may be true, the Court finds Bank of America's argument is better saved for the summary judgment stage—once all possible relevant evidence has been produced.  Third, Bank of America argues the Court did not require it to provide check deposit information in response to WAPP's interrogatories.  Rather, the parties' arguments at the hearing and the

Court's subsequent ruling dealt only with the scope of document production. The Court agrees. However, the Court directed WAPP to file a motion to compel on this issue, which it has done. Thus, none of Bank of America's arguments against producing the requested documents and information on transactions data are persuasive.

As for the discovery regarding profits from enrolled versus non-enrolled customers, Bank of America takes issue with the fact that WAPP seeks profit information from all customers, "and a comparison of the profitability of customers that are 'enrolled' in—but not necessarily using—mobile banking versus those that are not" (Dkt. #89 at p. 9). In response, WAPP offers to amend its request to accommodate Bank of America's concern regarding customers who are merely enrolled in, but not using, the mobile banking program. WAPP proposes the following amendment:

> Documents or data showing the difference between the total profits generated from customers that are using mobile banking and the customers that are not using mobile banking, by month, from application release date to present.

(Dkt. #93 at p. 4).[1] Because Wapp's proposed change addresses Bank of America's concern on this category of documents, the Court finds no issue with granting the request as modified.

Finally, Bank of America asserts there is no nexus or connection between the patents-in-suit and the bank branch closures. However, that is not for Bank of America to decide. Moreover, WAPP's request was for documents that "show correlation or causation" between the mobile banking application usage and physical bank branch reductions. To the extent Bank of America possess such documents, it should produce those.

It is therefore **ORDERED** that Plaintiffs' Motion to Compel (Dkt. #86) is hereby

---

[1] Request No. 5 currently reads: "Documents or data showing the difference between the total profits generated from customers enrolled in banking and the customers that are not enrolled in mobile banking, by month, from application release date to present."

**GRANTED**. Production as to Requests for Request No. 5 is narrowed in accordance with the Court's Order.

It is further **ORDERED** that Defendant supplement its discovery responses no later than fourteen (14) days from the issuance of this Order.

**IT IS SO ORDERED.**

**SIGNED this 28th day of June, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE